R. S. MIDDELTON, Respondent, v. DUNHAM LUMBER COMPANY, a Corporation, Appellant.

(205 N. W. 621.)

**Chattel mortgage — held, that evidence supports findings of trial court that there was no agreement between seller and purchaser of building material that structure to be built therefrom should remain personalty and become subject to chattel mortgage later to be executed.**

Held, for reasons stated in the opinion, that the evidence supports the findings of the trial court to the effect that there was no agreement between the seller and the purchaser of building materials that the structure to be built therefrom should remain personalty and become subject to the lien of a chattel mortgage later to be executed.

Opinion filed October 22, 1925.   Rehearing denied November 2, 1925.

Fixtures, 26 C. J. § 41 p. 679 n. 46.

Appeal from the District Court of Hettinger County, *Berry,* J. Affirmed.

*S. P. Rigler* and *Zuger & Tillotson,* for appellant.

"And while there is a conflict in the authorities as to the right of the prior mortgagee of realty to claim property subsequently annexed thereto, as against the person who sold such annexed property to the owner of the realty under an agreement that such property should be deemed personalty, we believe that, where as in this state, a mortgage is a mere security not giving any right to the possession of the premises (Comp. Laws, 1913, §§ 6725, 6726), the weight of authority and the better reason supports the equitable rule that the seller of the personal property so annexed to realty may generally enforce his claim upon such annexed property in accordance with the agreement under which it was sold, as against the prior mortgagee of the realty." Thompson Yards v. Bundy (N. D.) 196 N. W. 312.

*Otto Thress,* for respondent.

On trial de novo, supreme court acts independently of trial court's findings though said findings, as oral testimony, will be given some weight.   Merchants Nat. Bank v. Collard, 157 N. W. 488, 33 N. D. 556.

On appeal in equity the court will not disregard the opinions of the trial court on conflicting evidence of witnesses examined in open court. (Neb.) 169 N. W. 259.

If the findings of the trial court are not against the preponderance of the evidence such findings should be sustained and the judgment affirmed.   Northern Trading Co. v. Drexel Nat. Bank (N. D.) 164 N. W. 151.

In enforcing the lien on improvements, the mechanic's lien law does not contemplate a course that will destroy the value of the improvements.   Atkinson v. Colorado Title & T. Co. 151 Pac. 457.

JOHNSON, J.   The plaintiff brings this action to enjoin the defendant from removing certain buildings from a quarter section of land owned by her in Hettinger county.   The trial court granted an injunction.   The defendant appeals from the judgment.

It appears that some time prior to 1917 the plaintiff sold the land in Hettinger county to one Peter Heupel under a contract for a deed.

The contract is not in evidence, but it contained a stipulation that all improvements made on the land by the vendee should remain thereon in the possession of the vendor in the event the contract of sale be cancelled. Defaults were apparently made under the contract, and in December, 1922, the land was turned back to the vendor by a deed of quit claim.

Sometime during the summer of 1917, probably in July, the vendee Peter Heupel, purchased a quantity of lumber from the defendant at Hebron, this state. With this lumber he built what became the middle section of a barn on the land purchased from the plaintiff. There was a lean-to on each side, neither of which was constructed from lumber or materials purchased from the defendant. The lean-tos were joined to the middle section, and, according to the testimony, the whole structure became "a barn with two sides, all built in one." It was built upon a foundation of mortar and stone, a trench of 2 or 3 inches having been dug before the stone foundation was placed. The mortar referred to seems to be gumbo, a natural product available either on or in the vicinity of the land. The foundation is described by witnesses for the plaintiff as a "permanent foundation." It is in evidence that removal of the middle section would result in damaging the foundation and that the effect of such removal would almost necessarily be to destroy or seriously damage the lean-to on each side.

On January 20, 1921, Peter Heupel executed a chattel mortgage to the defendant to secure the balance of the purchase price of the lumber. This mortgage, in addition to the crop to be raised on the premises the ensuing season, covered the barn and the lean-tos. The lien of the mortgage was later foreclosed by the defendant, and the barn and the lean-tos sold by the sheriff. At the foreclosure sale, the defendant became the purchaser of the entire structure for the sum of $250.

The defendant claims, and its testimony tends to show, that at the time the lumber was sold to Peter Heupel, it was agreed between the defendant and the purchaser that the building should not be put on a solid foundation, that it should remain personalty, and that the purchaser would later execute a chattel mortgage thereon. It is on this theory that the defendant later procured a chattel mortgage, foreclosed the same, became a purchaser at the sale and attempted to remove the building.

Peter Heupel died subsequent to the execution of the quitclaim deed and before the action was tried. A son, John, testified in behalf of the plaintiff, that he was present when his father purchased the lumber from the defendant; that he went with his father "to look after the buying of the lumber;" that he heard all the conversation; that he heard the deal made between the defendant's agent at Hebron and his father; that he heard every word that was said; that nothing was said about a chattel mortgage or that the building should be put on such a foundation that it might be moved. He testified further that in order to remove the middle section, you would have to move the lean-tos or tear them down.

The trial court found that the plaintiff was the owner of the land on which the building was situated; that the vendee, under the land contract, purchased lumber and materials from the defendant from which the middle section of the barn was constructed; that there was no agreement between the defendant and Peter Heupel at the time of the purchase that the building to be constructed should remain personal property. The court found that the structure built from the material purchased from the defendant cannot be removed without material injury to the premises. The defendant contends that the evidence does not support these findings.

Under the contract between the plaintiff and her vendee, Peter Heupel, all improvements on the premises were to become her property in the event the contract was later cancelled. It cannot be disputed therefore that the lean-tos not constructed from lumber purchased from the defendant were improvements, and became the property of Mrs. Middelton when the contract was cancelled. The evidence, we think, overwhelmingly supports the conclusion that the middle section of the barn could not be removed without serious injury or damage to the lean-tos, which appear to have been more or less permanently affixed thereto. The entire structure rested upon a foundation described by some of the witnesses as permanent, and by others as a stone and mortar foundation of the type commonly used for barns in this state.

We do not believe that it is necessary to summarize the testimony further. The decision turns upon the very important and, we think, controlling question of whether there was an agreement that the barn remain personalty. We are satisfied that the findings of the trial court

on this point have sufficient support in the testimony. The witness, John Heupel, unequivocally asserts that he heard all the conversation when his father purchased the lumber and that nothing whatever was said as to a chattel mortgage, or that the building be put on skids or on a temporary foundation. In view of this testimony and the circumstantial evidence in the record, we think the finding of the trial court must be sustained that no such agreement was made.

In view of the conclusion, we have reached upon this point, it is not necessary to consider at length the question of whether removal of the structure will constitute injury to the realty. It is enough to say that we think the evidence supports the judgment of the trial court on this point.

The judgment of the trial court is affirmed.

CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and NUESSLE, JJ., concur.